## BROWN v. INGALLS TP., KAN.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

### No. 1,014.

1. MUNICIPAL BONDS—ESTOPPEL BY RECITALS.

Where municipal corporations have lawful authority to issue bonds upon the adoption of certain preliminary proceedings, and the adoption of those proceedings is certified on the face of the bonds by the officers to whom the law intrusts the power, and upon whom it imposes the duty, to ascertain, determine, and certify this fact, before or at the time of issuing the bonds, such a certificate estops the municipality, as against a bona fide purchaser of the bonds, from proving its falsity to defeat them.

2. SAME—ELECTION.

Where a law authorizing a township board to issue refunding bonds provides that the compromise shall not be valid "unless assented to by the legal voters of such township at an election," it is the fact of the assent of the voters, and not the certificate of that fact or the canvass of the vote, which confers the right to issue the bonds.

3. SAME—CANVASSING VOTE.

Where an election was held under Laws Kan. 1879, c. 50, §§ 1–3, authorizing townships to refund their indebtedness, with the assent of the voters of the township, and imposing upon the township officers the duty of calling and holding the election and the duty of issuing the bonds, it is the duty of the township board to canvass the returns and declare the result, and the act of 1875 (Gen. St. Kan. 1889, pars. 412, 7064, 7071, 7072), requiring the board of county commissioners to canvass the returns and declare the result of an election, does not apply to an election held under the act of 1879.

In Error to the Circuit Court of the United States for the District of Kansas.

A. A. Godard (D. M. Valentine, on brief), for plaintiff in error.

E. A. Madison (M. W. Sutton, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. On February 25, 1890, the township of Ingalls, in the state of Kansas, issued its negotiable bonds with coupons attached. Each of these bonds contained these representations:

"This bond is one of a series of fifteen bonds, of one thousand dollars each, and issued by virtue of and in accordance with the provisions of sections one, two, and three of chapter fifty of the Laws of 1879, being an act of the legislature of the state of Kansas entitled 'An act to enable counties, municipal corporations, the boards of education of any city and school districts to refund their indebtedness,' which said act took effect March 10, 1879; and it is hereby certified and recited that all acts, conditions, and things required to be done,

precedent to and in the issuing of said bonds, have been done, happened, and performed in regular and due form, as required by law."

Only three sections of the act of March 10, 1879, are material in this case. The first authorized every township in Kansas to refund its matured and maturing indebtedness and to issue new bonds for that purpose. The second provided that bonds issued by a township under that act should be signed by the trustee, attested by the township clerk, and countersigned by the township treasurer. The third section contained these provisions:

"When a compromise has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon to the holder of such indebtedness in the manner prescribed in this act: * * * provided, that no compromise by any township or school district shall be of any validity unless assented to by the legal voters of such township or school district, at an election or school meeting called for such purpose; of which election or school meeting at least ten days' notice shall be given." Gen. St. Kan. 1889, pars. 464–466.

Due notice was given of an election to determine whether or not the legal voters of the township of Ingalls would assent to the compromise on which these bonds are based; the election was held; 64 votes were cast, 62 of which were in favor of assenting to the compromise, and 2 were against it; the township board canvassed the returns, declared the result, and issued the bonds to those who were entitled thereto; but the board of county commissioners of the county of Gray, in which this township is situated, never canvassed the returns of this election. After the bonds had been issued, Ephraim A. Brown (who has since died) purchased the bonds, and Anne F. Brown, the executrix of his last will, the plaintiff in error, brought this suit against the township upon some of the coupons which had been attached to the bonds and which had not been paid. She is, and her testator was, when living, the bona fide purchaser for value of these bonds and coupons, without other notice of irregularities in their issue than they were by law bound to take. The case was tried by the circuit court without a jury, and the foregoing facts appear from an agreed statement which was adopted by the court as its findings. The court below held that by virtue of certain general provisions of the statutes of Kansas, which are not found or referred to in the act of 1879 (Gen. St. Kan. 1889, pars. 442, 7064, 7071, 7072), the board of county commissioners of Gray county was required to canvass the returns of this election, and that the bonds and coupons were void in the hands of an innocent purchaser, for value, because that board had never made the canvass. 81 Fed. 485; Faulkenstein Tp. v. Fitch, 2 Kan. App. 193, 43 Pac. 276. This is the only ground on which the counsel for the defendant in error attempts to sustain the judgment of dismissal which was rendered below, and, under the decisions of the supreme court of the United States and of this court, it is not tenable, for several reasons:

1. If it was the duty of the board of county commissioners to canvass the returns of the vote on the proposition to issue these bonds, then it was the duty of the members of the township board to send to the board of county commissioners the returns of the election for it to canvass, and it was their duty to examine the records of the county clerk, and determine therefrom whether or not that canvass had been made

before they issued the bonds. If a canvass and certificate by the board of county commissioners was the only evidence from which the members of the township board could determine whether or not the voters had assented to the issue of the bonds, then section 3 of the act of 1879, which made them invalid without such assent, imposed upon them the duty to ascertain and determine whether that evidence existed, whether that canvass had been made and certified before they issued the bonds, and, when they certified on the face of each of these bonds "that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been done, happened, and performed as required by law," they certified that the board of county commissioners had canvassed the returns and had filed a certificate thereof which showed that the voters assented to their issue, and the township of Ingalls is estopped from denying the truth of that certificate to defeat the collection of its bonds by an innocent purchaser for value. Where municipal corporations have lawful authority to issue bonds upon the adoption of certain preliminary proceedings, and the adoption of those proceedings is certified on the face of the bonds by the officers to whom the law intrusts the power, and upon whom it imposes the duty, to ascertain, determine, and certify this fact, before or at the time of issuing the bonds, such a certificate estops the municipality, as against a bona fide purchaser of the bonds, from proving its falsity to defeat them. National Life Ins. Co. v. Board of Education of Huron, 27 U. S. App. 244, 266, 10 C. C. A. 637, 651, and 62 Fed. 778, 792, and cases there cited; West Plains Tp. v. Sage, 32 U. S. App. 725, 736, 16 C. C. A. 553, 558, and 69 Fed. 943, 948; Board v. Howard, 49 U. S. App. 642, 27 C. C. A. 531, 83 Fed. 296, 298; E. H. Rollins & Sons v. Board of Commissioners, 49 U. S. App. 399, 26 C. C. A. 91, 98, and 80 Fed. 692, 699; Second Ward Savings Bank v. City of Huron, 80 Fed. 660; Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613; City of Cadillac v. Woonsocket Institution for Savings, 16 U. S. App. 545, 558, 7 C. C. A. 574, 578, and 58 Fed. 935, 939.

2. It was the fact of the assent of the voters at the election, and not the certificate of that fact, or the canvass of the vote, which authorized the township board to issue the bonds. That fact existed. The voters did assent by a vote of 62 to 2. How, then, can the bonds be void? The legislature might have provided that they should not be valid unless the board of county commissioners canvassed the vote and declared that the voters assented, but it did not do so, and it would be judicial legislation for a court to import into this law a condition precedent which the legislature omitted. The act authorizes the members of the township board to issue the bonds, and then provides only that the compromise shall not be valid "unless assented to by the legal voters of such township at an election." The best evidence of the result of an election is the ballots actually cast, and they were 62 for and 2 against the funding proposition. The returns of officers who count the ballots and the canvass and certificate of those who read these returns are, after all, but secondary evidence made prima facie by the statutes. If the ballots were preserved, any court trying the question of the result would receive them in evidence and base its findings upon their count. It is the vote at the

election, and not the certificate of the result, which confers the right, and that right may be enforced without the official certificate as effectively as with it. Paine, Elect. § 625, note 2, and authorities there cited. The assent of the voters of this township to the compromise upon which these bonds were based could not have been withdrawn by the failure of the county commissioners to ascertain and declare the fact, and, as the assent was all that was required to validate the bonds, they are not void.

3. We cannot assent to the proposition that the board of county commissioners was required to canvass the returns or declare the result of this election. That conclusion was only reached by importing into the act of 1879 the provision of the act of 1875, which declares that an election held under the latter act shall be conducted and the returns thereof ascertained in the manner prescribed by law for holding general elections, and by then citing the general law which requires the board of county commissioners to canvass the returns for general elections for state, county, and township officers. The act of 1879 contains no such provision. It is not an amendment of any other act or law, and it is complete and efficacious in itself. It imposes upon the township officers the duty of calling and holding the election and the duty of issuing the bonds. They must count the votes and ascertain the result in any event, and no reason is perceived why a provision from another law which would require them to return to the board of county commissioners a statement of the result which they had found, for the sole purpose of enabling that board to read this statement and certify back to them the same result, should be read into this law after the legislature wisely, and we must presume purposely, omitted it. When the legislature of Kansas by the act of 1879 imposed upon this township the duty of calling and holding the election, it undoubtedly intended to impose upon them the duty of canvassing the returns and declaring the result. People v. Dutcher, 56 Ill. 144, 147. The judgment below is reversed, and the case is remanded to the court below, with directions to render judgment for the plaintiff in error for the amount claimed in her petition.